IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| LOVELL AMISON JR. )<br>     ) <br>    Plaintiff ) <br>     ) <br> v.   ) Case No.: _____ <br>     ) <br> UNITED STATES OF AMERICA ) <br> ORLANDO TURNER ) <br>     ) <br>    Defendants ) | |

## COMPLAINT

Comes now the Plaintiff, Lovell Amison, who alleges the following facts, asserts the following causes of action, and seeks the following damages against the Defendants, the United States of America ("U.S.") and Dr. Orlando Turner.

### Parties, Jurisdiction, and Venue

1. This is a civil tort case to recover compensatory damages against the U.S. and/or Dr. Turner for Lovell's personal injuries suffered by and through the medical negligence of Dr. Turner and/or one or more other employees/agents of the U.S. Department of Veterans Affairs.

2. Defendant Orlando Turner is a physician over the age of 19. Upon information and belief, he was a citizen of the State of Alabama in April of 2017, and he remains a citizen of the State of Alabama to the present.

3. This Court has federal subject matter jurisdiction over Lovell's claims against

the U.S. by and through 28 U.S.C. § 1346(b)(1), through which Congress enacted a limited waiver of the sovereign immunity of the U.S. for tort claims and allows the U.S. to be sued for claims arising from torts committed by federal employees acting within the scope of their employment.

4. To the extent that Dr. Turner is not an employee of the U.S., this Court has supplemental jurisdiction over Lovell's Alabama state law medical malpractice claims against Dr. Turner pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in the United States District Court for the Northern District of Alabama, Southern Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims at issue occurred within this district and division.

Statement of Facts

6. Lovell is a veteran of the U.S. military having served overseas during the Iraq and Afghanistan wars and conflicts. He is also a disabled firefighter.

7. On Saturday, April 29, 2017, Lovell was transported via ambulance to the Veterans' Administration Medical Center facility in Birmingham, Alabama ("VAMC Birmingham") due to muscle spasms and pain in his back relating to old war and firefighting injuries. He arrived at VAMC Birmingham at approximately 11:25 p.m.

8. Lovell exhibited no signs of paralysis or breathing problems prior to his arrival at VAMC Birmingham. His vital signs were taken at approximately 11:35 p.m.,

and there is no notation that he had signs of paralysis or breathing problems on arrival. Furthermore, an exam indicated that he had intact reflexes and sensation upon arrival. Finally, he was able to walk and talk upon arrival in the VAMC Birmingham emergency department.

9. However, sometime after arriving at VAMC Birmingham, either during the last minutes of April 29, 2017 or during the first minutes of April 30, 2017, Dr. Turner administered injections of Toradol and Solumedrol above Lovell's belt-line and into his spine.

10. At the time he made the injections, Dr. Turner was an employee of the U.S., and he was working in the line and scope of his employment with the U.S. Department of Veterans' Affairs.

11. In the alternative to paragraph 10, Dr. Turner was not an employee of the U.S. and he was not working in the line and scope of his employment with the U.S. Department of Veterans' Affairs.

12. In the alternative to paragraph 9, the injections were not made by Dr. Turner, but instead they were made by Marc Cain, an employee of the U.S. working in the line and scope of his employment with the U.S. Department of Veterans's Affairs at VAMC.

13. In the further alternative to paragraphs 9 and 12, the injections were not made by Dr. Turner or Cain, but instead they were made by some other employee of

the U.S. working in the line and scope of his/her employment with the U.S. Department of Veterans's Affairs at VAMC.

14. Regardless of who performed the injections, however, Dr. Turner was responsible for the injections, and if he did not administer the injections, he was present and/or otherwise directed that the injections be made.

15. Regardless of who performed the injections, the injections were incorrectly and improperly made. The Toradol and/or the Solumedrol was incorrectly and improperly injected directly into the dura sac surrounding Lovell's spinal cord, or into his vascular system, or into some other improper place, which caused the Toradol and/or Solumedrol to cause a massive infarct injury to his spinal cord and brain stem.

16. Dr. Turner, Cain, and/or the other U.S. employee who made the injection improperly failed to utilize known safeguards and safety measures in administering the injection to Lovell and failed to utilize appropriate guidance technology and techniques in performing the procedure.

17. After receiving the improperly placed injections, Lovell immediately began to lose feeling and sensation in his extremities. Thereafter, he began to have trouble breathing. Ultimately, he found himself paralyzed from his neck down.

18. Lovell informed Dr. Turner, Cain, and the other U.S. employees present at VAMC Birmingham that he was losing feeling and control of his hands, feet, arms, and legs, and that he was becoming paralyzed.

19. Dr. Turner, Cain, and the other U.S. employees present at VAMC Birmingham failed to respond to Lovell's symptoms in a timely fashion. This caused Lovell further injuries and damages.

20. Despite his symptoms and complaints, at about 1:20 a.m. on April 30, 2017, Lovell was transported by wheel chair by Dr. Turner, Cain, Security Officer Bryan, and/or other employees of the U.S. outside VAMC Birmingham. They placed Lovell in the passenger seat of a vehicle owned and operated by Lovell's girlfriend and fiancé, Cherisse Poole, and shut the door.

21. Cherisse had great difficulty driving and keeping Lovell sitting in an erect position in her vehicle. They had to stop at a fire station because Lovell was having trouble breathing.

22. Within an hour of leaving VAMC Birmingham, Cherisse arrived at the emergency department at St. Vincent's Hospital East in Birmingham with Lovell.

23. The misguided and misdirected injections, failure to respond to Lovell's signs, symptoms, and complaints following said injections, and other negligence of Dr. Turner, Cain, and the other U.S. employees present at VAMC Birmingham was the direct and proximate cause of Lovell suffering permanent, irreparable injuries and damage to his brain, brain stem, spine, and/or spinal cord. Lovell has lost the use of his arms and legs, and has been rendered a quadriplegic.

24. Following Lovell's release from St. Vincent's, he was transferred back to

VAMC Birmingham and eventually to a spinal injury facility in Georgia for treatment. Lovell is currently confined at the VA Hospital in Memphis, Tennessee.

25. Lovell is only 35 years old.

## Presuit Compliance

26. Lovell executed two identical Form 95 documents on June 30, 2017. The first was mailed to (and filed with) the U.S. at VAMC Birmingham at 700 South 19th Street in Birmingham, Alabama 35233. Lovell's counsel also hand-delivered a copy.

27. The second was mailed to (and filed with) the U.S. Department of Veterans Affairs at 810 Vermont Avenue N.W. in Washington D.C. 20420. Lovell made a claim in the amount of $50 million in both forms. A copy of said forms is attached to this complaint as Exhibits 1 and 2.

28. On July 6, 2017, Lovell's counsel received an email confirmation from Alesia Doxie, a legal assistant for the U.S. Department of Veterans Affairs at the above-stated Washington address, that the Form 95 document sent to the Washington address had been received. A copy of this email is attached as Exhibit 3.

29. On the same day, Lovell's counsel also received a similar email confirmation from Erica Baylor, a Risk Management Program Support Assistant for VAMC Birmingham, that the Form 95 sent to VAMC Birmingham had also been received. See Ex.3

30. On July 18, 2017, Annie L. King, a legal assistant for the Office of General

Counsel at the U.S. Department of Veterans Affairs at 810 Vermont Avenue NW in Washington, DC 20420, mailed a letter to Lovell's counsel, stating that Lovell's claim number was GCL 345456. A copy of this letter is attached as Exhibit 4.

31. King also confirmed in the letter that the U.S. Department of Veterans affairs received Lovell's Form 95 claims on July 3, 2017. However, she misstated that Lovell was only seeking $50 thousand in damages. Finally, King requested that Lovell produce certain information to the U.S. Department of Veterans Affairs Investigator, Reshawana L. Banks, at 810 Vermont Avenue NW in Washington D.C. 20420.

32. On July 28, 2017, Lovell's counsel mailed a letter to King, (1) stating that the requested information would be compiled and sent to Banks as quickly as possible and (2) reiterating that the Form 95s sought $50M, and not $50K, in damages. A copy of this letter is attached to this complaint as Exhibit 5.

33. On the same day, Lovell's counsel mailed a letter to the Office of Regional Counsel for the U.S. Department of Veteran Affairs at 345 Perry Street in Montgomery, AL 36109, requesting that it "place a litigation hold on all materials relevant to this incident," including (but not limited to) "any and all surveillance videos taken in and around the outside of the emergency room, all hospital exits, and the parking lot(s) for four (4) hours leading up to Lovell's visit to the Emergency Room on April 29, 2017, and continuing until four (4) hours after his discharge on April 30, 2017." A copy of this letter is attached to this complaint as Exhibit 6.

34. On August 11, 2017, Lovell's counsel mailed another letter to King at the same address, requesting that the U.S. "preserve and maintain any and all evidence including, but not limited to, receipts, surveillance photos/videos, security video footage, parking lot video footage, any video or still images from the VA facility where treatment was rendered to the plaintiff," including (but not limited to) "all images, of any nature, moving and still, from the VA facility where Lovell was treated on April 29, 2017." A copy of this letter is attached to this complaint as Exhibit 7.

35. On November 21, 2017, Lovell's counsel mailed a letter to Banks at the above-stated address, requesting permission to photograph Lovell's pressure ulcers and requesting to have medical personnel present in order to accommodate this process. A copy of this letter is attached to this complaint as Exhibit 8.

36. On November 29, 2017, Lovell's counsel provided additional information and documents to King, Banks, and others at the U.S. Department of Veterans Affairs at the above-stated address, including (1) copies of medical records related to the injuries suffered by Lovell from St. Vincent's East Hospital in Birmingham, (2) copies of medical bills from St. Vincent's, (3) medical records from the ambulance company that transported Lovell originally to VAMC Birmingham, which stated that Lovell was suffering from back pain but no neurologic deficits, and (4) affidavits from qualified medical doctors about Lovell's injuries. A copy of this letter (without attachments) is attached to this complaint as Exhibit 9.

37. After 211 days, neither Lovell nor his counsel have received a notice of final denial of Lovell's claim by the U.S. Department of Veterans Affairs.

## Causes of Action

38. Lovell adopts and incorporates the facts stated above as if they were set forth herein.

39. All of the claims asserted herein derive from and are controlled by Alabama substantive law, including the Alabama common law of torts as modified by Alabama Medical Liability Acts, Ala. Code §§ 6-5-480, et seq., and §§ 6-5-540, et seq. ("AMLA"). However, regarding the claims made against the U.S., the controlling principles of Alabama substantive law are amended and supplemented by the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA").

40. On or about April 29 or 30, 2017, Dr. Turner, Cain, and other employees of the U.S. working within the course and scope of their employment with the U.S. at VAMC Birmingham were under a legal duty to possess and exercise that degree of care, skill and diligence commonly possessed and exercised by similar providers of medical services in the national medical community acting under the same or similar circumstances described herein.

41. Dr. Turner, Cain, and other employees of the U.S. working within the course and scope of their employment with the U.S. at VAMC Birmingham negligently breached the applicable standard(s) of care that applied to their

professions that were in effect at that time in one or more of the following respects while providing medical services to Lovell:

    (a) they damaged Lovell's brain, brain stem, spine, and/or spinal cord by improperly performing the injection;

    (b) they failed to utilize known safeguards, safety measures, and procedures while carrying out the injection on Lovell;

    (c) they failed to utilize appropriate guidance technology and techniques for the procedure being carried out on Lovell;

    (d) they improperly injected the medication into the wrong location;

    (e) they improperly injected the wrong medication into Lovell's back;

    (f) they were not being properly qualified to administer the injections;

    (g) they misdiagnosed the condition which caused Lovell to become paralyzed;

    (h) they improperly injected the medication into an artery or vein or into the dura or into some other inappropriate place and thereby causing him to suffer brainstem and spinal cord infarction;

    (i) they improperly directed and/or supervised the persons performing the injections.

    (j) they improperly failed to respond and failed to take appropriate steps to see that Lovell received appropriate treatment following the injection;

    (k) they abandoned Lovell; and

    (l) they ignored Lovell's adverse signs, symptoms, and complaints following the injection.

42. As a proximate result of the negligent conduct of Lovell, Dr. Turner, Cain, and other employees of the U.S., Lovell was caused to suffer the following injuries and damages:

    (a) He suffered permanent and irreparable injuries and damage to his brain, brain stem, spine, and/or spinal cord;

    (b) He suffered brain, brainstem and spinal cord infarct;

    (c) He suffered permanent paralysis from his neck down;

    (d) He suffered other physical injuries, including pressure ulcers that are directly and proximately related to his condition, the nature and extent of all other injuries are undetermined at this time;

    (e) He suffered and will continue to suffer extreme physical pain, mental suffering, and emotional distress;

    (f) He suffered permanent injury, scarring, disability, and disfigurement;

    (g) He suffered a loss of his enjoyment of life;

    (h) He has incurred and will continue to incur significant medical and other healthcare related bills and expenses in and about the treatment and rehabilitation of his injuries;

    (i) He has been caused to be permanently unable to pursue his normal and usual activities; and,

    (j) He was caused to suffer and in the future will suffer a substantial loss of earnings and wages, and other benefits.

43. The U.S. is vicariously liable under the FTCA for the torts of Cain and other employees of the U.S. who acted negligently at VAMC Birmingham in the late evening hours of April 29, 2017 and the early morning hours of April 30, 2017 as set

forth above.

44. The U.S. is vicariously liable under the FTCA for the torts of Dr. Turner to the extent that he was a U.S. employee acting within the course and scope of his employment during the late evening hours of April 29, 2017 and the early morning hours of April 30, 2017 as set forth above.

45. In the alternative to paragraph 44, to the extent that Dr. Turner was not a U.S. employee acting within the course and scope of his employment during the late evening hours of April 29, 2017 and the early morning hours of April 30, 2017 as set forth above, Dr. Turner is liable for his own negligent and wanton tortious conduct.

WHEREFORE, PREMISES CONSIDERED, Lovell respectfully requests this Honorable Court (1) to enter judgment in Lovell's favor, and against the U.S., Dr. Turner, or both, (2) to award Lovell compensatory damages from the U.S., Dr. Turner, or both to fully compensate Lovell for his damages not to exceed $50 million, (3) to award Lovell punitive damages against Dr. Turner for any wanton conduct by Dr. Turner (but only if Dr. Turner was not a U.S. employee), (4) award Lovell court costs, and (5) to grant Lovell such further relief as the Court finds is necessary and proper.

Respectfully submitted,

/s/ Richard Riley
David Marsh | Richard Riley | John David Marsh
Attorneys for Lovell Amison
MARSH, RICKARD & BRYAN P.C.
800 Shades Creek Parkway; Suite 600-D
Birmingham, Alabama 35209
(205)879-1981
dmarsh@mrblaw.com | rriley@mrblaw.com | jdmarsh@mrblaw.com

Request for Service

Plaintiff Lovell Amison requests that the Clerk immediately issue a summons pursuant to F.R.C.P. 4(e)(1) and A.R.C.P. 4(i)(2) for the following defendants to be served by certified mail at the following addresses:

UNITED STATES OF AMERICA
The Honorable Jay E. Town
U.S. Attorney for the Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203

UNITED STATES OF AMERICA
General Jeff Sessions
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530-0001

DR. ORLANDO TURNER
1900 University Blvd; Tht 229
Birmingham, Alabama 35233

/s/ Richard Riley
Richard Riley